IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

FILED
04 SEP 29 PM 3:50
U.S. ...
N.D. OF ALABAMA

| | |
|---|---|
| JAMES EDWARD WALLACE, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. CV-01-S-1233-M |
| ARTHUR HARRIS and FELECIA DAVIS CASH, | ) |
| Defendants. | ) |

ENTERED
SEP 29 2004

## MEMORANDUM OPINION

This is an action pursuant to 42 U.S.C. § 1983 by an Alabama state prisoner complaining about alleged violations of his federal constitutional rights while he was incarcerated in the Bibb County Jail in the latter half of 1999. In a complaint filed May 14, 2001, plaintiff alleged two essential claims: (1) that the defendants were deliberately indifferent to a dangerous condition in his cell, namely, a raised platform on which the toilet was placed, from which he fell on July 10, 1999, injuring the second toe on his right foot; and (2) that the defendants were deliberately indifferent to his need for medical treatment of the injured toe. Remaining as defendants[1] in this action are Arthur Harris ("Harris"), the chief jailer at the Bibb County Jail at the time plaintiff was there, and Felecia Davis Cash ("Cash"), the assistant chief jailer at the time.

Defendants Harris and Cash filed a special report on January 17, 2003, addressing the plaintiff's claims and asserting various defenses, including *res judicata*, collateral estoppel, and qualified immunity. The plaintiff responded to the special report on February 20, 2003, filing

---

[1] The original complaint named a number of additional defendants, however, all defendants but Harris and Cash were dismissed by the court's order of October 4, 2002. (Doc. 23).

affidavits and copies of his various medical records. In an order dated September 8, 2003, a magistrate judge of the court notified the parties that the special report would be treated by the court is a motion for summary judgment and gave the plaintiff twenty (20) days in which file any further response he might wish to offer. Plaintiff has filed various other motions and responses, including a motion for "declaratory judgment," filed October 1, 2003 (doc. 47). The motion for summary judgment is now under submission to the court.

## Summary Judgment Standards

Because the court is treating the special report from the defendants as a motion for summary judgment, the court must determine whether there are any genuine issues of material fact and whether the moving defendants are entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. See F.R.Civ.P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The burden of proof is upon the moving party to establish his *prima facie* entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. See Clark v. Coats & Clark, Inc., 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. See Celotex Corp. v. Catrett; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Barfield v. Brierton, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate

burden of proving his action, is able to show some substantial evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett; Bennett v. Parker, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

Bennett v. Parker, 898 F.2d at 1532. Any "specific facts" averred in the sworn complaint also are considered in opposition to the motions for summary judgment. Perry v. Thompson, 786 F.2d 1093 (11th Cir., 1986). Legal conclusions and vague allegations of fact, however, are not sufficient to preclude summary judgment.

## Relevant Facts

Applying these standards to the evidence presented in this case, the following facts appear to be undisputed or, if disputed, are taken in a light most favorable to the non-moving plaintiff.

In July 1999 plaintiff was incarcerated in the Bibb County Jail awaiting trial on pending criminal charges. At the time, he was an overweight 44-year old man with diabetes for which he had received some medical treatment while in the jail. On July 10, 1999, plaintiff was housed in a cell in which the toilet was elevated on a small platform. While moving from the toilet, plaintiff slipped and fell off the platform, catching the second toe of his right foot in a hole in the floor near

the toilet. At the time of plaintiff's accident, no other inmate had ever been injured by the raised platform, nor had any ever complained about it as a potentially dangerous condition.

Believing he had injured his toe, plaintiff made an oral request for medical attention to Assistant Chief Jailer Cash. She apparently looked at plaintiff's toe, concluded that the injury was not serious, and did nothing else. There is no evidence that plaintiff made any further complaints or requests for medical attention until eight days later, on July 18, 1999, when he submitted a written request for medical attention, noting that his toe and right foot were swollen and red. Two days later, on July 20, 1999, plaintiff was transported to the Bibb Medical Center emergency room where he was treated by Dr. Steven Chervenkoff. On examination, Dr. Chervenkoff found that plaintiff's right foot was swollen and red and that the second toe was infected with "skin cracks & necrosis." No x-rays were taken. Dr. Chervenkoff prescribed 500 mg. of Augmentin, an antibiotic, every eight hours and a follow-up four days later if the infection had not improved.

Five days later, on July 23, 1999, plaintiff again submitted a written request for medical attention, claiming that his foot was still red and swollen and that he needed to be taken to see a surgeon at DCH Medical Center in Tuscaloosa. Instead, plaintiff was taken on July 27, 1999, to see Dr. Ahmed Farah at Family Health Care. At that time, Dr. Farah noted that plaintiff had an ulcer on his distal toe, but that it appeared to be "resolving." Dr. Farah then extended plaintiff's prescription for Augmentin, ordered "wet-to-dry" dresses for the wound, and recommended that plaintiff be seen again three weeks later.

Plaintiff returned to Family Health Care on August 3, 1999, apparently seeing Dr. Farah again.[2] Noting that the toe was still red and swollen, Dr. Farah diagnosed plaintiff as having "cellulitis" and ordered an x-ray of the foot, which was performed that day at the Bibb Medical Center. Dr. Cathy Lovett interpreted the x-ray and rendered her opinion that it revealed, "No acute fracture." Accordingly, Dr. Farah added a prescription for Cipro, another antibiotic, and scheduled a follow-up for the plaintiff.

Plaintiff saw Dr. Farah again on August 17, 1999. At that time, Dr. Farah observed that plaintiff's toe was getting better. He wrote:

> There is good dorsalis pedis in the right foot. The erythema has subsided. There is [sic] no fluctuants or evidence of infection. The ulcer on the distal 2nd toe is contracting slowly. There is no surrounding dead tissue.

He recommended that plaintiff continue his routine wound care and return for a follow-up in one month.

Plaintiff was seen at the Bibb Medical Center on September 9, 1999, for an earache and facial numbness. He was treated only with cortisone eardrops.

Dr. Farah next saw plaintiff on September 17, 1999, and noted that plaintiff's toe "looks good" and that the ulcer was "small and appears to be healing well." He recommended that plaintiff continue his routine wound care and that he return for further treatment only as needed.

Plaintiff continued to experience medical problems with his feet, due primarily to his diabetes. On September 28, 1999, he was treated by Drs. Chervenkoff and Krishnamoorthy of Bibb Medical Associates for an infected right *great* toe (not the second toe previously treated for an

---

[2] Not surprising, the signature of the physician on the records is illegible, but it appears to be Dr. Farah's. It might well be that of Dr. Dimitcho Popov, however.

ulcer), resulting on the removal of the toenail. That procedure was followed up on October 6, 1999, and on October 26, 1999, with Dr. Krishnamoorthy referring plaintiff's complaints of leg pain to Dr. Popov for evaluation.

Eventually, plaintiff was transferred from the Bibb County Jail to the Alabama Department of Corrections on December 6, 1999, to begin serving his sentence. During a medical evaluation by the DOC, he was transferred to a hospital where he was diagnosed with multiple right foot fractures, probably secondary to his diabetic neuropathy. Plaintiff underwent surgery, but still was left with a permanently deformed foot.

During 1999, plaintiff filed suit in this court, in case number CV-99-J-669-S, in which he complained about his medical care at the Bibb County Jail, among other theories. Named as defendants in that litigation were Sheriff George Fleming and Chief Jailer Harris; Cash was not named as a defendant in the case. In an order granting summary judgment against the plaintiff and in favor of defendants Fleming and Harris, Judge Johnson described the nature of one of the plaintiff's theories of recovery this way:

> Wallace has also been taken to the hospital for treatment on July 20, 1999 due to an infection in his foot. Depo. of Wallace at 57-58. He injured it stepping off the raised platform on which the commode sits. He explained that there used to be a steel cage around the bathroom part of the cell, and the front of the cage had been cut out. *Id.* at 60. His toe went into a hole. *Id.* at 61. He believes he broke it based on x-rays taken. *Id.* at 57. He had actually injured it on July 10, 1999 and it became infected. *Id.* at 58. He testified he had problems with swelling and draining out of his toe. *Id.* at 60. He states that he and the jailers who accompanied him were told that if the swelling in his foot had not gone down in two days, he was to be taken to DCH in Tuscaloosa to a surgeon. *Id.* at 58-59. Wallace reported to Felecia Davis and another one of the jailers, two days later, that his toe was still swollen and he needed to go to the hospital. *Id.* at 59, 61-62. He states nothing was done that day. *Id.* at 62. He was, however, taken to Family Health Care for further treatment on his foot, and never told he needed surgery. *Id.* 65. He admits he received treatment for his foot after he wrote grievances and "kept asking for help." *Id.* at 192.

See Memorandum Opinion attached as exhibit to the Special Report of the defendants, p. 16. On summary judgment, Judge Johnson ultimately concluded that plaintiff's Eighth and Fourteenth Amendment rights to necessary medical treatment were not violated by the officials of the Bibb County Jail, and his claim for denial of medical care, including care for the injury or infection of his foot in July 1999, was dismissed. *Id.* at 27; see also Order Granting Summary Judgment, dated September 8, 2000, Doc. 64, in CV-99-J-669-S. Following an appeal, and on instructions from the court of appeals, plaintiff's claims were dismissed *with prejudice* on January 10, 2002. See Doc. 111 in case number CV-99-J-669-S.

## Discussion of Claims

As mentioned, plaintiff uses these facts to attempt to support two claims against defendants Harris and Cash. First, he contends that the raised platform on which the toilet in his cell was placed was a dangerous condition and that the defendants were deliberately indifferent to the danger, unnecessarily exposing him to a dangerous condition in violation of his Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment. Second, he alleges that after he injured his toe on July 10, 1999, defendants Cash and Harris unnecessarily and unreasonably delayed and denied his requests for medical treatment in violation of his Eighth and Fourteenth Amendment right to be free from cruel and unusual punishment. These two claims are discussed in turn below.

A. <u>Dangerous Condition</u>

Unreasonably dangerous physical conditions, hazards, or defects in jail cells can constitute a violation of a prisoner's right to be free from cruel and unusual punishment. <u>Marsh v. Butler County, Ala.</u>, 268 F.3d 1014, 1028 (11th Cir. 2001). A basic human right possessed by all inmates under the Eighth and Fourteenth Amendments is "reasonable safety." Deliberate indifference to conditions that deprive prisoners of reasonable safety constitutes a violate of the inmates' constitutional rights. <u>Id.</u> at 1029. For a jail official to be personally liable for such a deprivation, however, he must act or fail to act with "deliberate indifference" to the rights of the inmate. There must be four elements present for this to occur: (1) the condition at issue must constitute an objective, substantial risk of serious harm to the inmate, (2) the jail official must be subjectively aware of this risk, (3) the jail official must respond in an objectively unreasonable way to this known risk, and (4) the constitutional violation caused plaintiff's injuries. <u>Marsh v. Butler County, Ala.</u>, 268 F.3d 1014, 1029 (11th Cir. 2001). Deliberate indifference requires not only that the condition at issue be objectively and substantially dangerous, but the jail official also must *subjectively* recognize the danger and fail to act reasonably to eliminate or ameliorate it. It is not enough simply that a reasonable person would have recognized the risk of injury; the subjective prong of the analysis requires proof that these defendants *actually* recognized and appreciated the hazard.

Under the facts of this case, plaintiff's claim concerning the raised platform in his cell fails on both prongs; not only was it not objectively and substantially dangerous, these defendants did not subjectively recognize it as dangerous. First, the court is given no evidence about how high the platform was raised off the floor; we do not know whether it was mere inches or several feet off the floor. The burden of proof on this factual question rests on the plaintiff, and his failure to establish

8

with competent evidence that the height of the platform was objectively dangerous means that he has failed to meet his burden of refuting the defendants' motion. The platform was certainly open and obvious to any one in the cell, and it was not inherently dangerous, as would be true of exposed electrical lines. There is no reason to believe, objectively, that the platform presented a "substantial" risk of serious harm to the plaintiff.

Moreover, the defendants have affirmatively proven that before plaintiff's injury, they were unaware of any other inmate being injured on the toilet platform, or even any other inmate complaining about it. In short, defendants were *subjectively* unaware that the platform constituted a dangerous condition, and plaintiff has failed to offer any evidence attempting to refute this evidence by the defendants. Thus, the defendants' lack of subjective appreciation for the danger (if any) presented by the platform is undisputed by the plaintiff. As explained in Marsh, absent a defendant's subjective appreciation of a danger, it cannot be said that he acted with deliberate indifference to it. "An Eighth Amendment violation will occur when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not 'respond[ ] reasonably to the risk.'" Id. at 1028 (quoting Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970, 1982-83, 128 L. Ed. 2d 811 (1994)).

Because the undisputed evidence here fails to establish that the platform was objectively dangerous or that the defendants subjectively recognized it as a danger, plaintiff's Eighth and Fourteenth Amendment claim relating to the platform is meritless and due to be dismissed.

9

B. Medical Care

Plaintiff's second claim alleges that defendants Harris and Cash were deliberately indifferent to his need for medical care and treatment for the toe injury he suffered on July 10, 1999, falling off the platform. This very claim, however, was previously litigated in CV-99-J-669-S, in which at least Chief Jailer Harris was an actual defendant who prevailed on a motion for summary judgment. Both Harris and Cash now contend in the present action that the claim is barred from being relitigated by the doctrines of *res judicata*, claim preclusion, collateral estoppel, and issue preclusion.

*Res judicata* is a rule that enforces the finality of judgments. It has been described this way:

> Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action.

Sewell v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 94 F.3d 1514, 1518 n.3 (11th Cir. 1996)(citing Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n. 5, 99 S. Ct. 645, 649 n. 5, 58 L. Ed. 2d 552 (1979)). For *res judicata* to bar litigation, four elements must be present:

> Specifically, [*res judicata*] will bar a subsequent action if: (1) the prior decision was rendered by a court of competent jurisdiction; (2) there was a final judgment on the merits; (3) the parties were identical in both suits; and (4) the prior and present causes of action are the same.

Jang v. United Technologies Corp., 206 F.3d 1147, 1149 (11th Cir. 2000)(citing Israel Discount Bank, Ltd. v. Entin, 951 F.2d 311, 314 (11th Cir. 1992); Citibank, N.A. v. Data Lease Fin. Corp., 904 F.2d 1498, 1501 (11th Cir. 1990); In re Justice Oaks II, Ltd., 898 F.2d 1544, 1550 (11th Cir.1990)).

Applying these elements to the evidence in this case, it is clear that, at least with respect to defendant Harris, *res judiciata* bars plaintiff's medical-care claim in this action. Plainly, there was

a judgment on the merits in the earlier action in CV-99-J-669-S, involving the same plaintiff and the same defendant, Harris, and involving the very same legal claim and factual issue: whether defendant Harris was deliberately indifferent to plaintiff's need for medical care for the injury to his toe arising from his accident on July 10, 1999. This claim was litigated to judgment in an earlier action, and there can be very little doubt that plaintiff is barred from attempting to relitigate it here. With respect to Harris, all four elements of claim preclusion are present, barring plaintiff from attempting to litigate a claim he has already lost. Thus, defendant Harris is entitled to dismissal of this claim against him.

Although defendant Cash apparently was not named as a defendant in the earlier action, she also is entitled to dismissal of the claim against her here, either as a privy of defendant Harris or due to the application of collateral estoppel or issue preclusion against the plaintiff. First, the claim asserted in the earlier lawsuit sought to hold Chief Jailer Harris liable for failure to provide plaintiff with medical attention for the injury he suffered on July 10, 1999. At the time, defendant Cash was Harris's assistant chief jailer and actually involved in receiving plaintiff's complaint of injury. Legally and practically Cash was "in privity" with Harris with respect to the obligation to provide medical care to inmates in the Bibb County Jail. Once this court concluded that plaintiff was not deprived of constitutionally mandated medical care, both Harris (the named defendant) and Cash (his assistant in privity with him) became entitled to assert the bar of *res judicata*.

Even of Cash was not in privity with Harris with respect to this particular claim, plaintiff actually litigated whether he was deprived of necessary medical care for the toe injury he suffered on July 10, 1999. Having lost that battle, he is collaterally estopped to now claim a constitutional deprivation once again. Clearly such issues as whether plaintiff's toe injury was a "serious" medical

11

need and when and how the injury was treated were necessary to the resolution of the claim reached in CV-99-J-669-S, and were actually litigated in that case. Cash may assert estoppel to preclude plaintiff from attempting to relitigate the very factual issue he previously asserted and lost. This is a defensive use of collateral estoppel or issue preclusion, prohibiting the plaintiff from denying the consequences of having lost on this very factual issue in earlier litigation. The Eleventh Circuit Court of Appeals has identified three elements to collateral estoppel, or issue preclusion,[3] as follows:

> There are several prerequisites to the application of collateral estoppel: (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that earlier action.

McKinnon v. Blue Cross and Blue Shield of Alabama, 935 F.2d 1187, 1192 (11th Cir. 1991)(citing Greenblatt v. Drexel Burnham Lambert, Inc., 763 F.2d 1352, 1361 (11th Cir. 1985)). Subsequent cases have added a four element, that the party against whom the estoppel is applied had a full and fair opportunity to litigate the factual issue in the earlier action. See CSX Transportation, Inc. v. Brotherhood of Maintenance of Way, 327 F.3d 1309 (11th Cir. 2003). Clearly, all of these elements are present here. Plaintiff had the opportunity to litigate the medical-care claim in the earlier action; it is identical factual issue, and it was necessary to the resolution of the earlier case. Thus, Cash is entitled to dismissal of this claim based on collateral estoppel.

Finally, even if neither *res judicata* nor collateral estoppel bars plaintiff from suing Cash for denial of medical care, the undisputed facts reveal that Cash did not violate the plaintiff's Eighth and Fourteenth Amendment right to necessary medical care. On or about July 10, 1999, when plaintiff

---

[3] As the prior judgment on which the estoppel rests was rendered by a federal court, the principals of collateral estoppel are taken from federal common law, not Alabama state law. CSX Transp., Inc. v. Brotherhood of Maintenance of Way, 327 F.3d 1309 (11th Cir. 2003).

complained about injuring his toe, Cash examined the toe and determined that it was not a serious injury and did not need medical attention. That was a reasonable course of action by Cash. Despite plaintiff's protestations to the contrary, his toe was not broken at the time. Subsequent x-rays made on August 3, 1999, revealed "no acute fractures," thus indicating that the toe was not broken. Only on July 18, when the toe and foot had swollen from infection, did the need for medical attention become apparent, and steps were taken at then to secure the necessary treatment, which is recounted in the statement of facts above. Cash did not unreasonably deny or delay treatment of plaintiff's toe. Plaintiff's initial injury appears to have been nothing more than a small cut. Only when his diabetes exacerbated the injury days later and it became infected did it become a serious medical need for which treatment was necessary. When it did, treatment was provided.

It should be noted that the long catalogue of problems with his feet, even the fractures diagnosed after December 1999, described by the plaintiff were the product of his diabetes; they were not caused by the fall from the toilet platform he suffered on July 10, 1999, which is the particular injury he identifies as the one for which Cash and Harris denied him needed medical care. Indeed, the medical records make abundantly clear that the ulcer on the second toe of his right foot was treated successfully during the autumn of 1999. Then and later, plaintiff's diabetes and excessive weight combined to create new medical problems that continued to crop up in 2000 and afterward. In short, neither Harris nor Cash were deliberately indifferent to plaintiff's need for medical attention following his fall off the toilet platform. Initially, the injury to his toe was not serious, and when it became serious days later due to his diabetes, medical treatment was provided. Defendants are entitled to summary judgment on this claim.

Conclusion

In summary, both defendants are entitled to summary judgment on both of plaintiff's claims. The platform in his cell was not an unreasonably dangerous condition and, even if it was, the defendants did not subjectively appreciate the danger in a way that made them deliberately indifferent to it. As to plaintiff's claim for denial of medical care, defendant Harris is entitled to the defense of *res judicata* because he and plaintiff litigated this very claim in an earlier action. Cash also is entitled to the defense of collateral estoppel because plaintiff is estopped from attempting to relitigate a factual issue he previously lost. Finally, setting aside the procedural defenses, the undisputed facts simply fail to show that the defendants were deliberately indifferent to plaintiff's need for medical care, which did not develop into a serious medical problem until July 18, several days after the initial fall.

A separate order will be entered granting the defendants' motion for summary judgment (doc. 31) and denying plaintiff's motion for a declaratory judgment (doc. 47).

The Clerk is DIRECTED to forward a copy of the foregoing to plaintiff and all counsel of record.

DONE this __29th__ day of September, 2004.

_____
U.S. DISTRICT JUDGE